Good morning, your honors. May it please the court, Franco Pérez for Mr. Ismael Reyes-Rivas. For the court's permission, I'd like to reserve two minutes for rebuttal. Yes. Thank you, your honor. In this case, the district court misapplied the career offender enhancement after erroneously finding that Mr. Reyes' prior conviction for the Puerto Rico crime of aggravated battery qualified as a crime of violence. The district court arrived at this conclusion after consulting Spanish language documents, which contravened the Jones Act's English language requirement. How do we know that the district court consulted a Spanish language document? I didn't see anything about the district court said that indicate or wrote that indicated it had consulted such a document. Right. So the district court, after the case went up on appeal and Mr. Reyes sort of flagged the Jones Act violations, the district court later, or I should say the government, sought to introduce the untranslated documents, and in that, in rejecting the government's plea to certify and forward to this court those documents, the court said, and I'm quoting, the court used an untranslated version of the state court judgment of conviction at sentencing. It also said that the, basically that it was used by probation in calculating the sentencing range, so I believe that under Verlaine-Witt, that would constitute a reversible Jones Act error. I don't know if that satisfies you. No, the second part isn't what I was getting at. It seems to me we have two issues here. Issue number one is, can this sentence stand? In other words, as I read the district court's sentencing determination, which is not completely clear, it seems to me as if the district court regarded battery under this article of the Puerto Rico Code either as being individual or indivisible or as making no difference whether it was third or fourth degree battery. And the question I have in my mind is, is that a correct sentencing determination regardless of the untranslated document? Because the district court, to determine that Article 122 or Law 122 was qualified as a crime of violence, wouldn't have had a look at anything if the court regarded it as individual. If that is incorrect and the only way that the government can succeed in maintaining a career offender sentence is by showing that it's fourth degree battery, then the government needs that untranslated document and Roman Huertas may very well provide that that document is not available to them on remand. But I'm going to answer the first question first as to whether the sentence has to be vacated. Yes, Your Honor. We believe that Article 122 categorically is not a crime of violence, and that is because one of the modalities of the offense, third degree, captures conduct that does not meet Johnson's requisite level of force. Specifically, so what Article 122 does is it looks to Article 121's definition of battery, which includes any unwanted touching, and it is elevated to its aggregated form under third degree aggravated battery by sort of causing prolonged psychological damage or that the victim need prolonged psychological, yes. What does cause mean? Does that mean but for cause? Is that an approximate cause? I will, so I. Do you have anything that would help us in this case answer that question? I guess the best answer to Your Honor's question would be pointing to a case in the Gauriera, which is one of the ones we cited. And in that case, the priest inappropriately touched the minor, and the defendant pled guilty to that modality. So the inappropriate touching caused that the victim's need for battery. But that might have been foreseeable because it was inappropriate to touch in that way, that that would cause harm. So that would seem like proximate cause. For you to win, it would seem like you want it to be but for cause. Right. I touch somebody's leg, but their leg, unbeknownst to me, is such that, you know, touching even slightly can cause huge inflammation, so they have to get medical attention. You'd say if that's the case, well, that's good for you, right, because that shows that this is overbroad. But do we have anything that suggests that cause means but for cause rather than proximate cause? I would suggest that because the statute requires some element of intent, be it reckless, purposeful, or knowingly, then the defendant must have been able to foresee that that touching could have caused that psychological damage. So I guess it would be under the but for cause analysis. I don't know if that answers your Honor's question. Maybe I'm not tracking this. If the medical attention that results from the touching is foreseeable, that might suggest that it is encompassed by the residual cause. If the medical attention that results from the touching is not foreseeable but just simply occurs, that might suggest it falls outside the residual cause. I don't see any case law that tells me what cause means as between those two, and the word cause could mean either. The priesthood case that you cite seems to me like a case that you could describe as an inappropriate touching, in consequence of which a foreseeable psychological harm would resolve. That would seem to bring it more likely within the residual cause. So is there any case law that suggests that also a slight touching that resulted in medical attention, where the medical attention was not foreseeable as a result, would also be encompassed by this crime? I believe that would require the crime to sort of encompass perhaps a negligent measure, and I don't think that's the case here. But then it would seem like the crime is encompassed by the residual cause. Well, I'm not sure that the recklessness would necessarily fall under that. And even if that were the case, I don't see how. So the Supreme Court has described the residual cause as virtually an unworkable approach. So I don't see how we could even take that first step and sort of distill what the ordinary case would entail. And I realize that, yes, there must be that we must point to some case that would suggest that the statute operates in the way that we were saying. But I simply don't think that reckless conduct would fall under the residual cause. Mr. Perez, I can't remember, were you counsel at the sentencing? I was not, Your Honor. Okay. So do you know from your review of the record whether the following was brought to the attention of the sentencing judge with respect to a request for variance or otherwise? The sentencing commission, you can correct me if I'm wrong, had several months before the sentencing adopted an amendment eliminating the residual cause. From 4B1.2. That went into effect on August 1. The sentencing was on June 24, so 37 days before it was going to go into effect. Did no one mention this with respect to a potential variance? Do you know if the district court was aware of this change coming into place? Do you think that the district court might have wanted to know that? With respect to Your Honor's first question, I don't believe, I may be wrong, but from my recollection, I don't believe a variance was sought at the district court level. However, the parties did flag that the residual cause under Johnson's reasoning should also be deemed necessary. Of course, that's not my question. I'm honestly not sure, Your Honor, but I can submit a briefing as to that, if Your Honor would. Of course, at the time of sentencing, in this case, both parties were operating on the assumption, as I understand it, that the residual cause was going to go the same way that the residual cause under the Armed Career Criminal Act had gone, because Peckels hadn't been decided yet, so no one was relying on the residual cause. Yes, the district court relied, I believe, exclusively on the force clause. The parties achieved the case in the district court exclusively in terms of the force clause. So am I right that the way this was, no one thought the residual cause was in play? We now know that it was in play at the time, even though nobody knew it, but it actually doesn't exist now. Yes. So the person is being sentenced under a residual clause that no one thought was applicable, and that doesn't now exist, because now we've learned that actually back then it did exist. Yes. If the case were to be sent down for resentencing, I don't believe the residual clause would be available. If Your Honors have no further questions. Thank you. Good morning, Your Honors. May it please the Court, Mignon Schwartz for the United States. I'd like to start by addressing Judge Barron's question about what we know about how the harm under third degree aggravated battery has to be caused in order to consider whether the court might have been correct that a crime of violence under the, well, categorically a crime of violence, full stop. And I think that we get there not by analyzing the type of cause that is required, but by looking to Puerto Rico's definition of the lowest level of intent that is required to commit that crime. And that recklessness is defined in section 4651 as that the defendant wanted his conduct, conscious of the fact that it implied a considerable and illegal risk of producing the criminal act produced. That means, if we sort of shorten it down, that the defendant, at the time he committed the crime, had to be conscious of the fact that it implied a considerable risk of the treatment that would be required, because that's what makes it this particular crime. So in the priest case that my opposing counsel mentioned, the priest had to be conscious of the fact that his conduct with that child posed a considerable risk of that child requiring the prolonged treatment that would bring it within third degree battery. So just to be clear, you're saying under Puerto Rico law, if I just merely touched someone's hand next to me, and they stepped back, and in consequence of stepping back, stepped into a ditch and injured themselves, I could not be prosecuted? Correct, because you would not have been conscious of the risk that he would have required treatment from you touching his shoulder. So fundamentally, this case presents the question of whether intentionally injuring someone so badly that they have to seek medical attention ordinarily qualifies as conduct that presents a serious potential risk of injury. And we submit that the answer to that question is necessarily yes. Does that depend on it being, I forget, fourth degree or third degree? So we submitted that it does not actually matter, but we focused on fourth degree in our brief, because at the time that we submitted our brief... But this medical attention point, is that true for both third and fourth? Or is that only true for fourth? So the phrase medical attention appears in fourth, but the definition of third degree is that the battery must cause injury requiring hospitalization or permanent harm. And it says that this includes the transmission of an illness that requires treatment or prolonged psycho-emotional treatment. So the medical attention is a little bit more expansive in third degree, but it is still a form of medical attention, absolutely. At the time of our opening brief, the defendant had never contested the fact that he had been convicted of fourth degree aggravated battery, and we relied on that fairly heavily. The PSR said in the addendum that fourth degree aggravated battery is the crime that the defendant was convicted of, and the defendant never raised any protest to that. In his reply brief for the first time... The defendant never raised any protest to that. The defendant at that time was operating on the assumption the government had introduced the Spanish language J and C, the document spelling out the crime, and promised that it would put in an English language document, which promise it never kept. That's correct, Your Honor. However, the submission of the government was two calendar days before the sentencing hearing, so long after the PSR and I believe the addendum as well. And the original PSR, when the defendant lodged his objections to the PSR, the probation officer's response to those objections included the same language, saying you were convicted of fourth degree aggravated battery. That is a crime of violence. And the defendant never contested the factual basis for that statement. He never argued that he was not actually convicted of fourth degree aggravated battery. And so your argument is that the addendum to the pre-sentence report can replace the requirement for proper Shepard documents to prove the degree of a divisible crime? So, we submit... I mean, if we could do this by pre-sentence reports, we wouldn't have the Shepard rule, would we? I think the Shepard documents exist where there is a contention that he was not actually convicted of the modality that was a crime of violence. So, for example, in Roman Huertas, where it was an Article 401, Article 406 reclassification, the defendant said, hey, I was not convicted of the modality that was a crime of violence. The government has to prove which one I was convicted of. And in Roman Huertas, then, so there was a challenge to the modality because the crime concededly was not a categorical crime of violence. Two, there was a phoning of which modality the defendant had been afforded. I thought the defendant had contested in the district court that he was not convicted of fourth degree aggravated battery. He did not, Your Honor. And the reason that he could not have is because the pre-sentence report is very clear. He was sentenced to one year for aggravated battery. And his own brief at page 15 explains that the sentence for fourth degree aggravated battery is six months to three years. And the sentence for third degree, which is the only other option, is, I think, three years to eight years. So his sentence did not fall within a conceivable sentence for third degree aggravated battery. I'm just puzzled. But the document put forward shows that, in fact, it was third degree? No. The Spanish file? The Spanish file just shows it was fourth degree. Yes, Your Honor. That's it. Yes. So, basically, what we're saying is, yes, we failed to introduce the document that clearly says it was not fourth degree, but we didn't need it. We did not need to rely on it, first of all, because at the district court level, the discussion centered solely on whether the crime was categorically a crime of violence. And you also argued that no matter what degree it was, it doesn't matter. They both fall under the residual clause. Correct. Because the only argument that he makes against it falling under the residual clause is that it has to be violent and purposeful, and he says recklessness doesn't suffice. And we explained in our brief why that doesn't hold here for the residual clause. Before my recollection, I thought that in this court the government had filed a motion for summary disposition in which it requested that we summarily vacate the sentence and remand for resentencing. We did, Your Honor. And the reason we did that is for exactly the reason that was discussed just a few minutes ago, that at the time of the district court's original decision, nobody was arguing that the residual clause was applicable. We found out later that, of course, it was applicable and should have been considered. But the motion to vacate also said, as I understand it, that it was a disputed question as to whether the prior sentence was for third or fourth degree Article 122 battery. I don't believe that that assertion was made, Your Honor. Well, if it was, you'd be stopped with that, wouldn't you? That would be an illogical argument given what we know about what the PSR says. Because, as I mentioned, for two reasons. The addendum clearly says he was convicted of fourth degree aggravated battery and the sentence that he received was for fourth degree aggravated battery. Excuse me. Help me out here. What right does a defendant have to respond to an addendum to a pre-sentence report? I know the rule provides that the pre-sentence report has to be disclosed to the defendant. He gets it. He makes his objections. He did that in this case. The probation office then has a chance to review those objections and make any addendum. But do either the criminal rules or the local rules provide that the defendant there has an opportunity to object to the addendum? I'm not sure that it's specified in the rules. I'm not aware of any such provision. It could be in there, but I'm not aware of it. Correct, but practically speaking, the defendant does have the opportunity to speak at the sentencing hearing. Well, that's true. He has the opportunity to speak. If we could circle back to your previous question, what we might have said in our motion is that the district court did not rule on whether it was a conviction for third degree or fourth degree battery. And that is true as we read the sentencing hearing? That is true. What do we make of the question of, it's one thing if the district court had relied on the residual clause, and based on a conclusion that the residual clause applied, it imposed an offense. But we know the district court didn't. Correct. Because it was told not to. So we know the district court nonetheless thought the guideline enhancement applied, presumably because it relied on the fourth clause. Yes. Well, now we're saying that's not right. The government's not being able to agree that that's correct. To us. Okay, so your position on that, for the purpose of the appeal, we have to assume, as you see the case, well, the district court should have relied on the guideline for that purpose. So if we now went back to the district court and we said, the guideline applies, but only under the residual clause. Maybe you think it's a close case under the residual clause. But you should be aware, now that you've got the case, the residual clause is gone. Because the sentencing commission thinks it doesn't make sense to apply it anymore because it's so hard to figure out how to apply it. So they don't have a problem. Do you think the district court, knowing all that, that people thought the fourth clause doesn't apply, the residual clause might apply, but it's a close case, and in fact, it's so difficult to apply that the sentencing commission has gotten rid of it, that the district court would have concluded that, gee, it's important to give this person the enhancement? Because to me, it seems pretty uncertain whether a district court, in that situation, would think it is important to give the enhancement. And it might make sense, then, to actually hear whether the district court thinks the sentence we're attributing to it, as it having wanted to impose, actually was a sentence it wanted to impose. With all due respect, your point is well taken and is part of the assessment that drove our motion to remand in the first instance. So why are you now not taking the same view? I mean, just see it's fair. Let's just see it. Why wouldn't you just want to know? We're saying the district court sentenced this person to a significant extra amount of time. And we're doing it for reasons we have no idea that those are any reasons that the district court itself thought were good reasons to sentence this person. So what is the sense in affirming the sentence on the understanding that it really wanted this sentence, now knowing the basis on which it would be imposed? It seems fictional to me. So on one hand, I have to say that we agreed that it would be better for the district court to have considered the state of the law as it actually existed in the first instance. But once that motion was denied, we made what I think is the right argument that if the district court thought that the aggravated battery satisfied this higher bar of the force clause, it seems to me almost impossible to say that he thought it satisfied the use of force or threatened use of force clause, but didn't satisfy or wouldn't have thought that it satisfied the risk of substantial. What we'd be saying is, you know what, you were wrong. It doesn't satisfy that higher thing. The only thing it could satisfy is this very hard to say for phrase that the district court has described as a phrase that's very hard to apply. And then the sentencing commission thinks it's so hard to apply, it got rid of it. And that would say to the district court, do you still think it's worth imposing the guideline sentence? And that just seems like a question where I don't know, how would we be confident what the district court would say? Your Honor, I would actually disagree that you should say that this is not a crime of violence under the force clause. That's not what we're arguing about. But you didn't argue when you were briefed that it's a crime of violence under the force clause. Absolutely not, but let me explain the reason for that. No, no, no. Whatever the reason, we're limited by that concession. That's a concession. Alright? The government could have defended this sentence on any ground it chose, or it could have chosen not to defend the sentence as it indicated it was going to do in its motion for summary disposition. But when you decided to defend the sentence, you elected to defend it only on the residual clause. Correct, Your Honor. May I please explain the reasoning there? That doesn't matter what the reasoning is. That's the position you're stuck with. The reasoning could have been that a genie came out of a bottle and told you to defend on the basis of the residual clause. Alright? It doesn't matter. You're limited before us to the arguments that are made in your brief. And this is not a sobriety's argument. This is an argument that the district court bought and that you elected to abandon. And you're stuck with that. Yes, Your Honor. We agree with that. However, the reason that we elected not to argue the force clause is because there's no principled way to say that it satisfies the use or threatened use of force if it doesn't satisfy the presenting a risk of force. So, in other words, if we lose the residual clause argument, there's no way for us to win the force clause argument. But you could have made both. You could have said it satisfies the residual clause and it satisfies the force clause. Correct, Your Honor. But you chose not to do that. Because, at the end of the day, it doesn't matter. It doesn't matter to you. The only thing that just matters for what the district court's mindset might be. The whole idea here is we're trying to make sure that we uphold or reverse the sentence that the district court wanted, not a sentence that you want or we want. And so the only sentence we've got is the one that it imposed. And the reasons it imposed for it are not the reasons we'd be affirming it. Maybe that's fine if it's just clear that the reasons we'd be affirming are the ones the district court would also endorse. But I don't see how it is clearer when we're shifting from the force clause to the residual clause, which you can see, the residual clause is, if it meets the force clause, it's going to meet the residual clause. If it doesn't meet the residual clause, it won't meet the force clause. But it's not clearer that something that doesn't meet the force clause, that doesn't meet the residual clause, is just as serious a case. And we know that the Sentencing Commission doesn't think it's just as serious a case. So why would we think the district court would think it is? Because the district court thought it met the force clause. So the district court thought it was serious enough for that sort of higher standard of proof, if you will. So that means that your honor should have confidence that the district court would have found that it met the sort of lesser standard of the residual clause, which is just the risk of force. All right, thank you. I would just like to address the government's argument regarding the reliance on the unobjected PSR. I believe under the law of this circuit, an unobjected PSR is sufficient to establish the fact of conviction, but not to determine the nature or what the basis was for a divisible offense. So yes, perhaps if this was a divisible offense, the unobjected PSR would be sufficient. However, because the government certainly applied the modified categorical approach, it premised its argument, just as it is doing here, on the notion that Mr. Reyes was convicted of aggravated battery in the fourth degree. That necessarily implies that, yes, it is doing its analysis under the modified categorical approach. So under W.F. Eddings, which holds precisely that, in that case, the district court did not rely on the PSR's description of the offense. It only relied on, it didn't rely on that. And so I don't think that is a sufficient basis for affirming. There is a similar reasoning in Judge Lopez's concurrence in Serrano Mercado, where he essentially calls what the government is trying to do now, it's a sort of burden shifting. The government below, under Shepard... But we rejected that. In his concurrence, he said that was not the law. That's why he wanted to take it on bond. We didn't go on bond. But I think under Shepard, though, the burden is on the government to... Yeah, but Serrano Mercado makes clear under our precedent that that argument is not our law. It might be wrong, but it's just not precedent that, as a panel, we're free to disregard. So, I mean, we would still reiterate that point, but we do recognize that, Your Honor. If Your Honors have no further questions. No, thank you. Thank you.